**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| ASTRID GANDARIA, | § | |
| SANDRA ORTA, and | § | |
| MAYRA REYES | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| RIO GRANDE VALLEY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

NOW COME Astrid Gandaria, Sandra Orta, and Mayra Reyes, Plaintiffs in the above-styled and numbered cause, and file this Original Complaint against Defendant University of Texas Rio Grande Valley. Plaintiff would respectfully show the Court the following:

## I. **THE PARTIES**

1.1    Plaintiff Astrid Gandaria ("Gandaria") is an individual residing in Hidalgo County, Texas.

1.2    Plaintiff Sandra Orta ("Orta") is an individual residing in Hidalgo County, Texas.

1.3    Plaintiff Mayra Reyes ("Reyes") is an individual residing in Hidalgo County, Texas.

1.4    Defendant University of Texas Rio Grande Valley ("Defendant" or "UTRGV") is an arm or instrumentality of the State of Texas and is a public university organized under the laws of the State of Texas. UTRGV may be served by serving Guy Bailey in his capacity as President of UTRGV, Office of the President, 1201 West University Drive, Edinburg, Texas 78539.

## II.  JURISDICTION AND VENUE

2.1    This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiffs' causes of action are created by federal law, specifically Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; Title I and Title V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq*.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and FMLA regulation 29 CFR § 825.220.

2.2    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiffs' claims accrued in Hidalgo County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

3.1    Dr. Astrid Gandaria, Ms. Sandra Orta, and Ms. Mayra Reyes (collectively "Plaintiffs") worked with and were supervised by their dean, Dr. Luis Torres-Hostos ("Dean Torres"), who is the Founding Dean for the School of Social Work at UTRGV, who in turn reported to UTRGV's Provost, Dr. Luis Zayas ("Zayas" or "Provost Zayas"). Both Dean Torres and Provost Zayas are Puerto Rican males, and as reported by Dean Torres to Plaintiffs and other faculty, have been personal friends for the past 35 years.

3.2    During Plaintiffs' employment with UTRGV, all three Plaintiffs were discriminated against on the basis of their national origin by Dean Torres and Provost Zayas and faced brutal threats and retaliation for speaking-out on matters of public concern, ultimately culminating in their terminations. Additionally, Gandaria and Reyes were discriminated against on the basis of their disability, and both were terminated mid-contract from their full-time faculty positions without any procedural due process while being treated for cancer and after requesting reasonable accommodations under the ADA and FMLA.

**<u>Astrid Gandaria</u>**

3.3      On September 1, 2022, Dean Torres hired Dr. Gandaria on a 3-year renewable appointment as a full-time lecturer for UTRGV's School of Social Work Program. To entice Gandaria to accept his full-time employment offer, Dean Torres promised Gandaria extra income through an additional 4-course summer teaching opportunity. Gandaria ultimately based her decision to leave her position in public K-12 education to accept the position at UTRGV because of the promise of the extra income through teaching summer courses. Gandaria is originally from Reynosa, Mexico. Her position at UTRGV was that of Lecturer I at UTRGV. Gandaria's employment with UTRGV ended on May 31, 2024, after she was given a notice of non-reappointment on April 11, 2024, despite still having a year left on her 3-year appointment contract and having met and exceeded expectations on her 2022-2023 and 2023-2024 annual reviews.

3.4      During her employment with UTRGV, Gandaria discovered that she had been underpaid for classes she taught in Spring 2022 and Summer 2022, and for multiple overload classes she had taught in Spring of 2023. As a result, Gandaria filed complaints with UTRGV's administration as to the underpayment. In the process of investigating the underpayments, Gandaria discovered that she was not alone in having been underpaid for her classes, and that in fact multiple lecturers in her School of Social Work ("<u>SSW</u>") had also been underpaid. Specifically, multiple lecturers had been hired to teach a 6-credit course and were only paid for the equivalent of 3 credits, and or a 700 course that was not part of the UTRGV course catalog. Ultimately, UTRGV paid Gandaria the gross amount of $24,700 to make up the underpayment, but she was never given an explanation as to exactly how that money was allocated across the affected courses she taught.

3.5     In April of 2023, Gandaria informed Dean Torres that she intended to step down from her Co-Investigator role supervising field instructors to focus more on her faculty teaching position. Dean Torres accepted her resignation from that project but emphasized that he was saddened and that her role as a faculty member included "more than just teaching."

3.6     On or about May 30, 2023, Gandaria discovered she had been underpaid for her Spring and Summer 2022 classes, which she was teaching as an adjunct at the time, and that she had not been paid at all for her overload classes that year. Gandaria notified Dean Torres, Associate Dean of Academic Affairs John Gonzalez ("Gonzalez"), and the departmental accountant Claudia Dole ("Dole") of the issue. Dole responded that she would look into the matter. Between May and June of 2023, Gandaria continued to send emails to administrators, including Dean Torres, describing in detail concerns over enrollment numbers in her courses that resulted in underpayment. She even cited university policy to back up her claims.

3.7     In response to Gandaria's efforts to rectify the underpayment issue and cite university policy, Dean Torres wrote to Gandaria on June 2, 2023, stating "I appreciate your educating yourself about the HOP and advocating for yourself. At the same time, what we really need right now from everyone is more of a collaborative, team spirit and I am still struggling to see that from you, and I remain at a loss as to why or what has changed." In the same email, Dean Torres seemed to suggest that Gandaria was expected to work for free, as "everyone is being asked to do a little more."

3.8     In response to Dean Torres' June 2, 2023, email, on June 8, 2023, Gandaria brought her concerns to university Compliance Officers Samantha Allen and Bertram Oparaku ("Compliance Officers"), asking them to help her prevent what she interpreted as an imminent breach of contract against her by Dean Torres:

I have compiled information and experienced a series of events that led me to believe that I will be the victim of a potential breach of contract. I was misled into a contract as a result of false promises, and I detrimentally relied on those promises. I am reporting this matter in good faith with the hope that you can guide me and help me prevent the potential breach of contract and promises.

3.9    Gandaria and Dean Torres met on June 21, 2023, to discuss Gandaria's concern over her field course enrollments and associated pay, the assignment of her Fall 2023 courses, and her fear of retaliation for raising her concerns. Gandaria memorialized that meeting in a June 23, 2023, email to Dean Torres, in which she thanked Dean Torres for meeting with her and confirmed that he had reassured her that she would not be retaliated against for exercising her rights under existing university policies and procedures.  In that email, Gandaria also thanked Dean Torres for clarifying what he described as a cultural misunderstanding regarding his statement to Gandaria in Spanish, "muerto el perro se acaban las pulgas," which translates to "with the dead dog, the flea problem ends." During the meeting, Gandaria had told Dean Torres that in her native country of Mexico, that saying ("dicho") culturally means "you are a problem, and you are out," but Dean Torres told her that it may have a different cultural meaning in Puerto Rico.

3.10    Dean Torres responded the same day to Dr. Gandaria's email, citing that he "too often found [himself] in a little trouble while using a Puerto Rican word or expression in Mexico, Central or South America" and that [he appreciated their] exchange and apologize[s] once again that the expression caused [Gandaria] some pain." He went on in that email to say he would correspond with Provost Zayas and that Gandaria would "be paid every penny [she was] owed" and that Gandaria's case was "simple," because she "taught the classes, [she was] assigned more classes than [she] should have been because of an oversight with several of the classes [she was] assigned being worth 6 SCH, so [she was] owed several overloads. That's the end of that and we will make a final determination next week and process the payment ASAP."

3.11    In an email dated July 5, 2023, Gandaria reached back out to the Compliance Officers with four main topics of concern. Firstly, she brought up that her initial concern over Dean Torres began on March 9, 2023, during a mediation meeting between Plaintiff Reyes, herself, and Nelda Rodriguez ("Rodriguez"), Gandaria's immediate supervisor over field courses (that meeting was moderated by Dean Torres and later discussed with Ombudsman Veronica Cano, who by June 2024, had taken over a position as Director of Field Courses). Gandaria informed the Compliance Officers that during the March 9, 2023, meeting, Dean Torres declared to them that then-candidate-for-Provost Zayas had been his friend and mentor for 35 years, and that Dean Torres had already been chosen as Provost (despite that fact not having yet been officially announced). Dean Torres was the chair of the Provost search committee. Gandaria expressed to the Compliance Officers that she could find no other reason for Dean Torres to raise these points about the Provost at that meeting other than to intimidate those present, including herself, with his close connection to Zayas.

3.12    Secondly, in Gandaria's July 5, 2023, email to the Compliance Officers, she shared about the June 21, 2023, meeting with Dean Torres, in which he had recited the "dicho," or cultural colloquialism, that "to rid yourself of a flea problem, the dog should be deceased," and that by him saying that to her, she felt threatened. She also wrote that while Dean Torres tried to explain away "dicho" as meaning something different in his native language of Puerto Rico, he had told her at the end of the June 21, 2023, meeting, "You are not the dog; you are not the problem, but you are part of the problem." She further joked in the email to the Compliance Officers that she supposed that would make her the "flea," and pointed out that after researching the colloquialism and consulting with three native Puerto Ricans, she learned that the colloquialism had the same

meaning in Puerto Rico as it does in her native country of Mexico, leading her to believe Dean Torres intended to send a message that he would try to get rid of her.

3.13    As her third point to the Compliance Officers, Gandaria wrote that Dean Torres willfully mischaracterized her acceptance of her assignments and was deliberately "setting [her] up for failure" by purposely creating a negative paper trail and disparaging her character in an effort to "harass [her] as a form of retaliation for exercising [her] rights as a faculty member under UTRGV's policies and procedures."

3.14    Gandaria concluded her email with her fourth concern being that based on course assignments for full-time faculty by John Gonzalez ("Gonzalez"), Associate Dean for Academic Affairs, it was clear UTRGV policies were not being applied consistently and fairly. Gandaria pleaded with the Compliance Officers to offer her guidance for working through the four concerns.

3.15    Just six days after Gandaria's email to the Compliance Officers, on July 11, 2023, Gandaria suddenly received a check from UTRGV for $24,700 for "Faculty Overload Fall/Spring." She was not provided with any detail or explanation as to how that amount was calculated. However, her net pay from that amount after taxes and deductions by the university was only $13,898.39. Gandaria inquired with her tax advisor as to the legitimacy of those taxes and deductions; in response, her tax advisor told her that the university did not have to deduct so much money and was probably very upset with her to have taken so much out of what it paid her. Gandaria did not spend any of the money, pending the resolutions of her concerns through the Compliance Officers' investigation.

3.16    On July 24, 2023, after Gandaria continued to petition Rodriguez, Gonzalez, and Dean Torres for a redress of her concerns over teaching assignments, Dean Torres made it clear in an email to Gandaria, Rodriguez, and Gonzalez that he had had enough of Gandaria's complaints,

issuing another threat to Gandaria, this time in bold lettering: "And yet here we are again. We are expending too much time and effort on something that to me is very clear. **This needs to stop. Astrid, if you are unwilling or unable to teach the courses you are assigned, please simply state that and we will take it from there."**

3.17    By August 25, 2023, Dean Torres' intimidation and retaliation in response to Gandaria's inquiries had reached a new level. In an email to her on that date, Dean Torres threatened to end Gandaria's job if she did not stop her inquiries, once again placing his threat in bold lettering:

> As far as I am concerned, this matter is closed. **If you cannot function according to the parameters laid our in your letter of hire and in line with my decisions as dean, you are welcome to submit your resignation and seek a position elsewhere. I will accept your resignation without question.** Should your behavior questioning my decisions and those of my leadership team continue, I will begin exploring other options.

3.18    Gandaria subsequently reached back out to the Compliance Officers on September 12, 2023, informing them of events that had transpired since her last report to them on June 8, 2023, including the mysterious July 11, 2023, check, changes to her teaching assignments, and Dean Torres' multiple threats against her if she did not stop seeking clarification of those assignments. The Compliance Officers never responded to Gandaria's September 12, 2023, email.

3.19    Dean Torres did not cease his mission of retaliation against Gandaria, continuing to escalate that retaliation until he finally carried out his threat of terminating her employment, and did so without procedural due process, mid-contract, and in violation of Title VII, the FMLA, and the ADA.

3.20    On December 14, 2023, Dean Torres made clear that his threats and actions against Gandaria and other faculty were based, at least in part, on their Reynosa, Mexico ethnicity and national origin. During a public departmental meeting that day, Dean Torres made fun of the fact

that a new British faculty member lacked the "Reynosa accent" of Gandaria and other faculty whose national origin or ancestry was from Reynosa, Mexico.

3.21    Also during the Fall 2023 semester, Gandaria discovered that she had breast cancer and required prompt surgery. Accordingly, on December 19, 2023, Gandaria submitted a request to go on FMLA for the period of January 8, 2024, to February 21, 2024, to accommodate her surgery and associated recovery. It was not until after her surgery, on January 17, 2024, that Gandaria received approval for her requested FMLA from Human Resources ("HR"). On February 1, 2024, Gandaria informed HR that she had received clearance to return to work on February 5, 2024. However, shortly afterwards, Gandaria learned that her doctors wished her to continue with 16 chemotherapy treatments for her cancer. Fearing loss of her job if she exhausted the rest of her FMLA to complete those treatments, Gandaria convinced her doctors to give her an alternate treatment plan that would enable her to go on intermittent FMLA. Gandaria requested intermittent FMLA from HR on February 16, 2024, to cover the period of February 23, 2024, to August 30, 2024, with her taking leave for 8 hours every 21 days. HR approved the request.

3.22    Dean Torres did not miss the opportunity to use Gandaria's life-threatening situation and associated FMLA as an opportunity to retaliate against her. When she had not heard anything about her upcoming summer teaching assignments (despite having been promised, as a condition of her accepting her employment, four summer courses every summer), Gandaria inquired with Associate Dean Leticia Villereal Sosa ("Sosa"). Sosa told her that there were very few summer teaching assignments available, and that there had been many requests for them, but that she had not yet made final decisions regarding those summer assignments.

3.23    Gandaria replied to Sosa the next day, assuring her that her FMLA would in no way interfere with her requested summer teaching assignments. She copied Dean Torres and Gonzalez

on that email. Dean Torres replied to that email the same day, April 3, 2024, denying that he ever promised summer classes, and referring her back to the August 25, 2023, email wherein he threatened Gandaria's job if she did not stop her inquiries.

3.24    Gandaria later discovered that other faculty less qualified than she was, but without disabilities and without "Reynosa accents," including part-time lecturers, were given as many as three summer classes by Dean Torres. One such part-time lecturer was Cynthia Catchings, who had donated thousands of dollars to the university foundation.

3.25    On April 11, 2024, despite her still being in the second year of her three-year appointment, Dean Torres effectuated his ultimate plan of retaliation against Gandaria by issuing her a non-reappointment letter, effective May 31, 2024, while she was still on intermittent FMLA for her breast cancer chemotherapy treatments. Dean Torres' choice of timing in ending her full-time employment resulted in the termination of Gandaria's medical insurance in the middle of her cancer treatments. This timing was intentional and in retaliation for her bringing complaints to the university's administration about Dean Torres, possible wage theft against her and other SSW faculty, and course assignments. In addition, this timing was discrimination by Dean Torres and Provost Zayas on the basis of Gandaria's disability, request for ADA accommodation, exercise of her FMLA rights, and her "Reynosa accent" – that is, her ethnicity and national origin from Reynosa, Mexico.

3.26    Dean Torres' excuse for ending Gandaria's employment was that lines of funding for faculty were being repurposed to "meet operational needs in the School of Social Work," and thus two lecturer positions (Gandaria's and Plaintiff Reyes') would be combined into a single Clinical Professor position, despite the fact that the funding for Gandaria's position had already been secured for three years at the time of her hiring (and thus would not expire until the end of

May of 2025). Gandaria was never transitioned into a Clinical Professor position or any other open position, and despite Dean Torres' claim that the lecturer positions held by Gandaria and Reyes were being eliminated, on August 2, 2024, Dean Torres posted a job announcement for a new one-year, full-time lecturer in the SSW.

3.27    On May 1, 2024, Gandaria filed a final complaint with the Compliance Officers, this time for discrimination by Dean Torres on the basis of disability and for him retaliating against her for filing complaints. After not receiving a response from the Compliance Officers, Gandaria appealed to UT System attorney Trey Atchley on May 6, 2024, who simply referred her back to the Compliance Officers.

3.28    Gandaria finally received a response from the Compliance Officers in two emails dated May 29, and June 7, 2024, respectively, in which the Compliance Officers determined her claims of discrimination and retaliation were unsubstantiated, despite the plethora of evidence to the contrary.

3.29    Overall, Dean Torres and Provost Zayas, three decades-old friends both originating from Puerto Rico, conspired to end, and did end, Gandaria's full-time employment mid-contract (she was in the second year of her three-year appointment) without procedural due process; they discriminated against her because of her "Reynosa accent," her Mexican national origin, because she is a woman, and because of her disability as a cancer patient;  additionally and/or alternatively, they retaliated against Gandaria for requesting reasonable accommodations under the ADA and FMLA; for daring, as a woman, to challenge the pay she and others received from "El Patrón," or other decisions and issues she brought to the attention of Compliance Officers.

3.30    As set forth below, Gandaria exhausted all necessary administrative remedies. She filed a charge of discrimination and retaliation with the EEOC under Title VII and the ADA and has received her notices of right to sue under both statutes.

**Sandra Orta**

3.31    In March of 2016, Orta began her employment with UTRGV as a Title IV-E Child Welfare Program Coordinator. In 2022, Dean Torres promoted Orta to Director of the Title IV-E Child Welfare program. Under this new position, Orta had the discretion to direct UTRGV's Title IV grant funds. Dean Torres served as Orta's supervisor. Meanwhile, starting in Fall of 2018, Orta also taught as a part-time Lecturer I, and continued teaching classes in SSW until she was stripped of all duties and ultimately terminated by Dean Torres and Provost Zayas in Fall 2023.

3.32    Since UTRGV hired her in 2016, Orta always exceeded expectations on all annual performance reviews for her grant work, and subsequently continuously exceeded expectations in teaching. Dean Torres wrote in her 2021-2022 annual evaluation that Orta "exemplifies the values of the University and the School of Social Work. She always represents us with the highest standards of excellence, professionalism, and performance." Indeed, in 2021, Orta won prestigious awards such as Rio Grande Valley Social Worker of the Year and most notably, the 2021 NASW/Texas Social Worker of the Year state-level award.

3.33    Despite Orta's stellar track record and accomplishments, in the years to follow, Dean Torres began a campaign of discriminatory and hostile behavior towards Orta and other faculty and staff in SSW. While Orta served as Director, Dean Torres increasingly undermined Orta's capabilities and treated her as if she were not educated enough or qualified enough for her position. Although she remained Director of the Title IV-E program, Dean Torres decimated Orta's

decision-making powers over the Title IV grant funds which she had exercised in the past, instead transferring those powers to himself and others in his senior leadership circle.

3.34    Dean Torres also created an increasingly hostile and discriminatory work environment for Orta and other SSW faculty and staff. Dean Torres, who is from Puerto Rico, would regularly mock Mexican accents within earshot of Orta, who is of Mexican descent (her father is from Reynosa, Mexico). In one instance in or about September of 2023, Dean Torres declared that he thought the Mexican accent "sounded like singing," and proceeded to loudly and insultingly mimic, in Spanish, the Reynosan Mexican accent, doing his impression of those who had such accent, in front of multiple employees, including Orta.

3.35    By June of 2023, Dean Torres had created a list of SSW employees whose lines of funding he wished to "repurpose," moving money away from their positions. The list included Orta and Plaintiffs Gandaria and Reyes, as well as two faculty who were set to retire in December of 2023, Héctor Palacios and Sonja Arredondo. Orta, Gandaria, Reyes, Palacios, and Arredondo were all Mexican or of Mexican descent, and most had raised concerns regarding Dean Torres' conduct and issues in the SSW department.

3.36    As time went on, Dean Torres continued to change the nature of Orta's role as Director of the Title IV grant, and, despite federal regulations preventing him from doing so without prior federal authorization, used his supervisory position over Orta to force a change in the grant's Principal Investigator ("PI"). On September 22, 2023, Dean Torres demanded Orta to provide him with a list of tasks and responsibilities to be carried-out for the Fall 2023 semester, as well as a list of students in the program. He had decided to have Sosa, his Associate Dean of Academic Affairs, assume the position of PI over the grant, effective January 1, 2024, despite federal grant rules preventing such a change. Orta attempted to explain to Dean Torres that federal

grant rules prohibited such a change in PI without prior federal authorization. Dean Torres became enraged and told Orta to do it anyway, reminding Orta that, as he had announced in prior leadership meetings, that he was "El Patrón," culturally meaning that he was the boss and that she, as a woman working under him, should stay silent and obey. At the same time, he also demanded that Orta provide him with her 2020 Job Audit Request, which had promoted Orta from the program's Program Coordinator to its Director.

3.37    Orta promptly provided Dean Torres with his requested lists and audit, and upon quickly reading them during a meeting with her, he tossed the lists on his desk and stated "this list can be done as a part-time employee, and there may be no need to be a full-time employee," indicating that terminating Orta's full-time employment status was on his mind.

3.38    Four days later, Dean Torres further made it clear that he was in charge and not Orta, declaring that Orta's decisions were "unauthorized," and that decisions regarding which faculty members could attend conferences supported by the grant were to be discussed and approved by senior leadership, specifically himself, and that Orta could only make recommendations. Dean Torres' edict was not consistent with Title IV grant requirements, which do not require direct approval of the Dean for grant expenditures, given that the Dean was not the PI of the grant. In fact, UTRGV HOP ADM 07-200 strictly defines the responsibilities which deans or other unit heads have regarding grants, reserving to the PI the authority to determine how funds are utilized, and to ensure that expenditures abide by grant guidelines.

3.39    As Dean Torres pointed out, his directive diverged from what had been the practice in the past. As Title IV-E Program Director, Orta had been selecting faculty members for particular conferences based on their multiple years of support, guidance, and match percentage on budget,

which indicated the level of benefit each faculty member provided to the Title IV-E Child Welfare Training program and its students.

3.40    Orta became increasingly concerned that the changes Dean Torres was demanding would put students and the community at risk of losing valuable child welfare services. Orta was particularly concerned by Dean Torres' demand that Title IV-E grant funds be used to support the travel of other attendees who were not in direct support of the grant, or who had a lower match percentage for dissemination of child welfare in the Title IV-E Child Welfare Training Program. Additionally, Orta noticed that, despite being Director of the grant, she had never received information as to the amounts of the federal grant funds that were being reimbursed to UTRGV by the federal government.

3.41    On October 2, 2023, Orta realized that she had not been paid the $5,000 she was owed, funded by the Title IV-E grant program, for designing a new "Forensic Social Work" course, which she had been working on for the past year and had completed. The next day, on October 3, 2024, Orta inquired with Dole, who was in charge of departmental accounting and was a long-time friend of Dean Torres, regarding the missing payment, as well as the missing payment on the evening course, SOCWK 3362.0 Foster Care and Adoptions, she was currently teaching. Dole replied to Orta that her evening class was already incorporated into her Title IV contract, and thus she was not owed pay for it. This was not the case, as Orta received a separate contract as a part-time Lecturer I to teach that evening class. Orta also inquired of Dole as to the lack of information surrounding the reimbursement of grant funds from the federal government. Dole replied that she had no knowledge of where those funds went.

3.42    After consulting with Plaintiff Gandaria and learning that Gandaria had discovered errors in UTRGV's payment to faculty for teaching field courses, Orta realized that she had not

received payment for any of the field courses she had taught since she began working for UTRGV in 2016. This led Orta to begin questioning what had been really going on regarding payments within SSW – why could no one account for funds received from the federal government? Why was the department not paying faculty what they were owed? She became increasingly concerned that Dean Torres and others may have been misappropriating grant funds.

3.43    On October 6, 2023, Orta attempted to blow the whistle, using her UTRGV email account to contact the Texas Department of Family and Protective Services ("FPS"). She emailed Leroy Torres, the division administrator for the FPS office division, who manages FPS's contracts with state offices. These include client service contracts related to child welfare, purchased client services, and most relevant to Orta's inquiry, offices that oversee University Title IV-E stipends. Orta requested clarification on contract course teaching stipends and payments. Orta was never able to view a response from Leroy Torres, however, as her university email was cut off three days later, on October 9, 2023, when she was put on investigative leave.

3.44    Orta learned she was being put on investigative leave when Dean Torres called her and told her to report immediately to the HR office. She had no advance notice or information as to what the meeting was about, or that there was going to be a meeting. Upon starting the meeting, Dean Torres read aloud to Orta a Notification of Leave with Pay During Investigation, declaring that she was being placed on immediate paid leave pending the outcome of an investigation. Having read the notification, Dean Torres promptly exited the conference room, leaving HR employee Debra Torres to ask Orta if she had any questions. Orta then asked Ms. Torres what the investigation was about, and Debra Torres replied that she could not provide Orta with any further information. Orta was then immediately escorted by Ms. Torres and a campus police officer to her

office and told to gather her personal belongings. She was then walked off campus and told she could not return to campus until further notice.

3.45    While on paid leave, on November 9, 2023, Orta noticed that a deposit of $17,028.64 was mysteriously deposited into her personal checking account from UTRGV. In response, Orta reviewed her university deposit statement, whereupon she noted that the gross amount of the deposit was $29,568.75 for "Staff Teaching PT." No further details were provided as to the breakdown or rationale behind the deposit. Orta assumed the payment was related to the underpayment concerns she had raised but noted the large amount ($12,540.11) in taxes and deductions that the university had taken out of the gross amount. Orta consulted with the same tax advisor Gandaria consulted with, and as with Gandaria, Orta was told by the tax advisor that the university had taken out more taxes and deductions than was needed or customary as an expression of anger and/or retaliation against Orta.

3.46    On November 15, 2023, Orta received a letter declaring Dean Torres' intention to terminate her employment the next day, November 16, 2023, due to "unacceptable conduct." No reference was made as to the reason behind the investigation of Orta or the outcome of that investigation. On November 16, 2023, Orta received final notice that her employment as Program Manager at UTRGV was terminated effective that date. She also was removed from her teaching position, despite her evening class being on a separate contract.

3.47    Orta appealed Dean Torres' decision on November 20, 2023, to Provost Zayas and HR employee Debra Torres. On December 11, 2023, Zayas, who had been close friends with Dean Torres and a mentor to him for 35 years, denied Orta's appeal. At no point did Orta ever receive any information or any conclusion of the investigation she was placed under. UTRGV violated its

own Handbook of Operating Procedures, policy ADM 04-303: Discipline and Dismissal of Classified Employees, in terminating Orta's employment while she was still on investigative leave.

3.48    The policies and procedures of UTRGV were automatically incorporated into Orta's contract when she was hired in 2016 to manage UTRGV's Title IV-E grant program and to teach as a Lecture I. As such, UTRGV and its administration, including Dean Torres and Zayas, breached Orta's contract and violated her due process rights when they terminated her employment while she was on investigative paid leave. These actions, in violation of UTRGV' own policies, were committed as part of the prohibitively hostile work environment created by Dean Torres and backed up in every instance by Provost Zayas. Additionally, or alternatively, these actions were in retaliation for Orta resisting the prohibitively hostile work environment of the SSW which Dean Torres maintained through discrimination against her (and others) on the basis of Reynosa, Mexican ethnicity and accent, and through his treatment of Mexican women, in particular, as menial servants of him, El Patrón.

3.49    Ultimately, Dean Torres, Zayas, and UTRGV discriminated and/or retaliated against Orta by terminating her employment because she inquired not only into her own pay, but also into the university's potential misconduct with regards to the Title IV federal grant funds. None of Orta's actions would be considered "unacceptable conduct" except by administrators acting with discriminatory and retaliatory motives toward a Mexican woman who had the temerity to challenge a Puerto Rican man, and his handling of state funds. Orta therefore brings this lawsuit alleging discrimination the basis of sex, ethnicity and national origin, and alleging retaliation, in violation of Title VII of the Civil Rights Act of 1964.

3.50     As set forth below, Orta has exhausted all necessary administrative remedies. She filed a charge of discrimination and retaliation with the EEOC under Title VII and has received her notice of right to sue.

**Mayra Reyes**

3.51     In October of 2021, Reyes was recruited by Nelda Rodriguez ("Rodriguez") to work with her as the Field Coordinator for the SSW program at UTRGV. Rodriguez instructed Reyes to follow her orders since she was the person in command and to follow an office schedule (8 a.m. to 5 p.m.). In January of 2022, Reyes was hired as a Clinical Associate Professor at UTRGV.

3.52     In August of 2022, Dean Torres clarified Reyes' role and acknowledged that Rodriguez was micromanaging Reyes and treating her as a staff member, rather than faculty. Dean Torres sent out an email to clarify the difference between the roles of staff members and faculty members. The key difference was that faculty members do not have to work an 8 a.m. to 5 p.m. schedule and had much more flexibility in where and when they could work.

3.53     Despite Dean Torres' attempt to clarify to Rodriguez that Reyes was a faculty member, Rogriguez continued to micromanage and treat Reyes as a staff member. Dean Torres emailed Rodriguez again, reiterating his previous clarification.

3.54     On March 9, 2023, Reyes participated in a mediation meeting (moderated by Ombudsman Veronica Cano) discussing the roles and responsibilities of the UTRGV Field Education Office. Reyes, Dean Torres, Rodriguez, and Gandaria were in attendance. During that meeting, Rodriguez made direct personal attacks at Reyes, calling her a "backstabber" and stating that "she knew she should not have hired her but did so regardless of what others in the community told her about [Reyes]." Dean Torres failed to take any action in response to these inappropriate

comments and allowed Rodriguez to continue her personal attacks against Reyes during the meeting.

3.55     In May of 2023, Dean Torres called Reyes into his office to recall the March 9, 2023, meeting. During the recollection of that meeting, Dean Torres stated that he agreed with Rodriguez that Reyes was a "backstabber" and claimed that Reyes was "ghetto" because she spoke with her hands and because of the bluntness of her emails to others in the office.

3.56     During the SSW's Spring hooding and pinning ceremony on May 11, 2023, Dean Torres publicly referred to himself as "El Patrón," culturally signifying to the SSW faculty and staff, particularly women, that he was their boss in a master-slave type of relationship.

3.57     In June of 2023, Dean Torres threatened to terminate Reyes's administrative position because she was allegedly not behaving well in faculty meetings. With one of his typically inappropriate gender-laden comments, he declared that the only thing holding him back at that point was the fact that she is a single mother who had just bought a home for her family. In that same month, Dean Torres again rebuked Reyes, telling her to shape up and stop pushing back against the administration's decisions. In fact, Dean Torres asked if Reyes "was going to be a pain in the ass?" Reyes responded by saying that it was not her intention to be a troublemaker—instead she just wanted clarity as to some of the administration's decisions, and as a result, was being told that she "has problems with authority."

3.58     In September of 2023, Reyes contacted Dean Torres and Rodriguez informing them that she no longer wanted to work in the Field Coordinator office. As a result, she was moved to provide in-person courses in UTRGV's social work bachelor's program during the Spring of 2023. Her request to be removed was due to the toxic environment of the Field Coordinator's office, which was created and maintained by Dean Torres and Rodriguez.

3.59    In December of 2023, Reyes suffered a medical emergency that required emergency hospitalization, and her doctor recommended surgery. Reyes feared taking time off and undergoing surgery because of Dean Torres' previous lack of empathy towards Reyes' health; for example, when she had been in the emergency room, he criticized her "ineffective communications." Based on her past interactions with Dean Torres, and his prior comments and threats against her, Reyes reasonably feared that she would be terminated by Dean Torres if she were to take time off to address her health.

3.60    During the Fall SSW hooding and pinning ceremony, which took place on December 14, 2023, Dean Torres made a disparaging remark about the faculty in SSW having a Reynosa accent. This offended Reyes, who was born in Reynosa, Mexico.

3.61    Dean Torres' domineering, retaliatory, and discriminatory behavior towards Reyes became all-encompassing, and along with Plaintiff Gandaria, she sought to remedy Dean Torres' behavior and the hostile work environment he created. On March 1, 2024, SSW faculty were sent an invitation by Provost Zayas to evaluate Dean Torres as part of a routine administrative evaluation by the university. Reyes desired to use the opportunity to remedy her situation with Dean Torres, but fearing retaliation from him, Reyes emailed Zayas, Dean Torres' long-time friend, on March 8, 2024, asking him if the survey would be anonymous and if her responses would not be connected to her name. On March 11, 2024, Zayas responded to Reyes, assuring her that her name and responses would be kept anonymous.

3.62    In the Spring of 2024, Reyes, who had been diagnosed with kidney cancer, could no longer put off her needed surgery. She requested and was approved by UTRGV for FMLA leave. On April 9, 2024, Reyes received a signed offer for re-appointment of her position for the 2024-2025 academic year. Reyes signed her acceptance of the offer, and submitted the letter of re-

appointment on that date, giving her confidence that her health condition would not jeopardize her employment for the 2024-2025 academic year.

3.63    Two days later, on April 11, 2024, a little over a month after Reyes, Gandaria, and others submitted negative evaluations of Dean Torres, while Reyes was on FMLA leave and on the same day she was undergoing her cancer surgery, Reyes was notified that Dean Torres was non-reappointing her and that her employment – including her medical insurance – would end on May 31, 2024. Like Gandaria, Reyes believes Dean Torres specifically timed Reyes' non-reappointment to inflict maximum retaliatory damage against her, knowing that she was going through cancer treatment and thus depended on her medical insurance.

3.64    Dean Torres' stated reason for non-renewing and terminating Reyes was that the administration was repurposing the lines of funding for faculty and combining positions. However, Reyes had already signed and submitted, two days prior, her offer of re-appointment for the 2024-2025 academic year. Moreover, UTRGV and specifically the SSW, advertised open positions which proved that Dean Torres' reasons were mere pretext. Dean Torres' wrongful termination of Reyes and the timing of it was a form of retaliation and/or discrimination against Reyes for her disability (cancer); additionally and/or alternatively, it was in retaliation for her requesting and using FMLA leave; additionally and/or alternatively, it was a continuation of his discrimination against her based on sex and national origin; finally, pleading additionally and in the alternative, it was in retaliation for her – a woman of Mexican nationality, and with a Reynosa accent, giving him a negative evaluation and having been an outspoken female employee. In short, Dean Torres' decision to withdraw Reyes' letter of reappointment and Provost Zayas' ratification of such act, violated Reyes' rights under the FMLA and Title VII of the Civil Rights Act of 1964.

3.65    Reyes sues now for UTRGV's violation of her rights under the FMLA. As set forth below, Reyes has filed her charge of discrimination and retaliation with the EEOC under Title VII and will seek leave to amend this Complaint when she has received her notice of right to sue, indicating that she has exhausted her administrative remedies.

## IV.  CAUSES OF ACTION

4.1    *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pleaded in the alternative. Further, to the extent necessary, all allegations set forth above in the Factual Background section of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

**Count 1:    Employer Discrimination on the bases of sex, national origin, ethnicity, and disability.**

*Violation of Title VII and the ADA*

4.2    Title VII prohibits discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a)(1).  Specifically, Title VII prohibits discrimination based on those characteristics "with respect to [an employee's] compensation, terms, conditions, or privileges of employment." Title I of the ADA prohibits discrimination based on disability.

4.3    **Dr. Astrid Gandaria.** On or about July 30, 2024, Gandaria signed and submitted an EEOC charge against UTRGV for (1) discrimination on the basis of disability and national origin, and for (2) retaliation. Her charge was assigned EEOC Number 451-2024-02975.

4.4    On October 10, 2024, Gandaria received two letters from the Department of Justice, notifying her of her right to sue within ninety days on her claims under Title VII and under the ADA. Gandaria has timely brought this lawsuit, within ninety days of her receipt of the notice letter.

4.5      As set forth above, Defendant UTRGV, through Dean Torres and other employees, has discriminated against Gandaria based on her national origin (from Reynosa, Mexico), and her disability (cancer). She further intends to supplement her EEOC charge to add discrimination on the basis of sex under Title VII and will seek leave to amend this complaint when she has received notice of her right to sue on such basis.

4.6      **Sandra Orta.** On or about July 18, 2024, Orta signed and submitted an EEOC charge against UTRGV for discrimination on the basis of age, national origin, and sex. Her charge was assigned EEOC Number 451-2024-03049.

4.7      On July 23, 2024, Orta received a letter from the EEOC notifying her of her right to sue within 90 days on the claims asserted in her charge. Orta has timely brought this lawsuit, within 90 days of her receipt of the notice letter.

4.8      As set forth above, Defendant UTRGV, through Dean Torres and other employees, has discriminated against Orta based on her national origin or ethnicity, (that is, she is of Mexican descent, and her father and her accent are from Reynosa, Mexico) and sex (female).  She does not sue here for age discrimination. She further intends to supplement her EEOC charge to add retaliation under Title VII and will seek leave to amend this complaint when she has received notice of her right to sue on such basis.

4.9      **Mayra Reyes.** On or about July 18, 2024, Reyes signed and submitted an EEOC charge against UTRGV for (1) discrimination on the basis of disability and national origin, and for (2) retaliation. Her charge was assigned EEOC Number 451-2024-03016.

4.10     Reyes has requested a right to sue letter but has not yet received one. She further intends to supplement her EEOC charge to add discrimination on the basis of sex under Title VII.

Reyes will seek leave to amend this complaint once she has been notified of her right to sue, to add her claims for retaliation and discrimination, based on the allegations above regarding discrimination by UTRGV, through Dean Torres and others, against Reyes based on her disability (cancer), her national origin (from Reynosa, Mexico), and her sex (female).

4.11    Incorporating all of the allegations set forth in Section III of this Complaint, Defendant has, through its employees, discriminated against Plaintiffs in their compensation, in the terms, conditions, and privileges of their employment, and in terminating their employment. This has caused damage to Plaintiffs for which Plaintiffs Gandaria and Orta, having exhausted their administrative remedies, each now sues.

**Count 2:     Retaliation for Protected Conduct under Title VII and the ADA**

*Violation of Title VII and the ADA*

4.12    Title VII also prohibits harassment and retaliation by an employer against an employee who opposes an employment practice that violates Title VII. *See* 42 U.S.C. § 2000e-3(a). Title V of the ADA prohibits retaliation based on an employee's exercise of rights under the ADA. As set forth above, Defendant, through Dean Torres and other employees, has retaliated against and harassed Plaintiffs Gandaria and Reyes for protected activity, and for availing themselves of rights granted by the ADA. This has caused damage to Plaintiffs Gandaria and Reyes, for which Gandaria, having exhausted her administrative remedies, now sues.

**Count 3:     Retaliation for exercising FMLA rights**

*Violation of the Family and Medical Leave Act, § 105 and FMLA Federal Regulations CFR § 825.220.*

4.13    Gandaria's significant health issues prompted her to seek approval for leave under the FMLA. Gandaria qualified for FMLA leave, including intermittent leave, and her request was approved by UTRGV. Dean Torres retaliated against Gandaria for exercising her rights under the

FMLA. While she was undergoing cancer treatments, and while she was using her approved FMLA leave, Dean Torres acted to terminate her employment and to leave her without health insurance. Dean Torres was displeased with Gandaria taking FMLA-protected time off. Accordingly, Dean Torres' actions and their timing were in retaliation for Gandaria exercising her rights under the FMLA, and Dean Torres' conduct was in violation of that statute and the regulations promulgated thereunder. Provost Zayas and UTRGV authorized, ratified, and adopted Dean Torres' decisions and conduct, and therefore, Defendant UTRGV is in violation of the FMLA, which has damaged Gandaria. She has lost her employment, including her income and her health insurance benefits, and has suffered mental anguish and emotional distress as a result of UTRGV's violations of the FMLA, for which she here sues.

4.14    Reyes' significant health issues prompted her to seek approval for leave under the FMLA. Reyes qualified for FMLA leave, and her request was approved by UTRGV. Dean Torres retaliated against Reyes for exercising her rights under the FMLA. While she was undergoing cancer surgery, and while she was using her approved FMLA leave, Dean Torres acted to terminate her employment and to leave her without health insurance. Dean Torres was displeased with Reyes taking FMLA-protected time off. Accordingly, Dean Torres' actions and their timing were in retaliation for Reyes exercising her rights under the FMLA, and Dean Torres' conduct was in violation of that statute and the regulations promulgated thereunder. Provost Zayas and UTRGV authorized, ratified, and adopted Dean Torres' decisions and conduct, and therefore, Defendant UTRGV is in violation of the FMLA, which has damaged Reyes. She has lost her employment, including her income and her health insurance benefits, and has suffered mental anguish and emotional distress as a result of UTRGV's violations of the FMLA, for which she here sues.

## V.  REQUESTED RELIEF

5.1     As the direct and/or proximate result of UTRGV's actions complained of herein, Plaintiffs have been damaged and seek recovery of the full measure of relief and damages against UTRGV to which they are entitled, including but not limited to actual and/or economic damages, back pay, front pay, damages for mental anguish and emotional distress, nominal damages, if applicable, equitable relief, and compensatory damages.

## VI.  FEES, COSTS, AND INTEREST

6.1     Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in connection with this matter, and have agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiffs seek to recover their reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k).

6.2     Plaintiffs are also entitled to and seek to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  CONDITIONS PRECEDENT

7.1     All conditions precedent to the Plaintiffs' recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial and have tendered, or will tender, the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon final

hearing, Plaintiffs recover judgment against Defendant and be awarded:

(a)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)     their litigation expenses and costs, including but not limited to attorneys' fees and costs and any applicable expert fees;

(c)     costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX

**ATTORNEYS FOR PLAINTIFFS ASTRID GANDARIA, SANDRA ORTA, AND MAYRA REYES**