United States District Court
Southern District of Texas

**ENTERED**

March 30, 2026

Nathan Ochsner, Clerk

.UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ASTRID GANDARIA, SANDRA ORTA, and MAYRA REYES, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 7:24-CV-00423 |
| UNIVERSITY OF TEXAS-RIO GRANDE VALLEY, DR. LUIS TORRES-HOSTOS, in his official capacity as Dean for School of Social Work at UTRGV, DR. LUIS H. ZAYAS, in his official capacity as Provost and Senior Vice President for Academic Affairs at UTRGV, and DR. GUY BAILEY, in his official capacity as President of UTRGV, | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Astrid Gandaria, Sandra Orta, and Mayra Reyes (collectively, "Plaintiffs") were full-time faculty lecturers at the University of Texas Rio Grande Valley ("UTRGV") School of Social Work ("SSW"). Beginning in 2023, Plaintiffs allege that their supervisor Dr. Luis Torres-Hostos ("Dean Torres") subjected them to hostile and discriminatory work environments. These hostile work environments included disparaging remarks by Dean Torres against women and people from Reynosa, Mexico. Plaintiffs also allege that they were not properly compensated for the courses they taught. When Plaintiffs brought their complaints to Dean Torres and UTRGV, they allege that UTRGV did nothing to address them and eventually terminated their employment or declined to

reappoint them following the completion of their terms.  In response, Plaintiffs filed this lawsuit alleging violations of Title VII of the 1964 Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA").

Pending before the Court are Defendant UTRGV's Motion to Dismiss Plaintiffs' Second Amended Complaint, (Dkt. No. 19), and Defendants Torres-Hostos, Zayas, and Bailey's Motion to Dismiss, (Dkt. No. 27).  For the following reasons, the Court **GRANTS** UTRGV's Motion as to Plaintiffs' Title VII retaliation claims and **DENIES** it as to Plaintiffs' Title VII gender and national-origin discrimination claims.  The Court also **GRANTS** the individual Defendants' Motion as to Plaintiffs Orta and Reyes's ADA and FMLA claims.[1]

## I.      BACKGROUND[2]

Plaintiffs Dr. Astrid Gandaria, Sandra Orta, and Mayra Reyes are all former faculty members of the University of Texas Rio Grande Valley School of Social Work.  (Dkt. No. 18 at 3).  All three Plaintiffs are women of Mexican descent.  As employees of the SSW, Plaintiffs worked with and were supervised by the SSW Dean, Dr. Luis Torres-Hostos.  (*Id.*).  Dean Torres reported to UTRGV's Provost, Dr. Luis Zayas, with whom he has had

---

[1]     Both Motions move to dismiss all counts against all Defendants.  However, Plaintiffs only bring Title VII claims for sex and ethnicity/national origin discrimination and retaliation against UTRGV, and Plaintiffs Gandaria and Reyes only bring ADA and FMLA claims against the individual Defendants.  (*See* Dkt. No. 18 at 23–29); (Dkt. No. 32 at 4–5).

[2]     The Court accepts all factual allegations in the Complaint, (Dkt. No. 18), as true and views them in the light most favorable to the nonmovant, *see White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

a close personal relationship for over 35 years. (*Id.*). Both men are Puerto Rican. (*Id.*). Throughout their employment at UTRGV—up to and including their terminations— Plaintiffs claim that they were discriminated against on the basis of their gender; national origin; and, for Gandaria and Reyes, their disability. (*Id.* at 3–4).

### A.    ASTRID GANDARIA

In September 2022, Dean Torres hired Gandaria as a full-time lecturer in UTRGV's SSW Program on a three-year renewable appointment. (*Id.* at 4). As part of her employment offer, Dean Torres promised her extra income if she taught a four-course summer class, which Gandaria accepted. (*Id.*). Gandaria held the title of Lecturer I and was evaluated as having met and exceeded expectations on her 2022-23 and 2023-24 annual reviews. (*Id.*).

Despite the terms of her employment contract, Gandaria noticed that UTRGV had underpaid her for several classes she taught in Spring 2022, Summer 2022, and Spring 2023. (*Id.*). She raised the issue with UTRGV's administration. (*Id.*). Although UTRGV did not explain the underpayment, it eventually paid Gandaria $24,700 in back wages. (*Id.* at 4–5). During this time, Gandaria learned that UTRGV had similarly underpaid several other lecturers. (*Id.* at 4).

Gandaria brought this issue to Dean Torres and several other UTRGV employees, who promised to investigate the matter. (*Id.* at 5). Throughout the spring and summer of 2023, Gandaria continued sending emails to the UTRGV administration—including Dean Torres—about the missing payments and her concerns about over-enrollment numbers in her courses. (*Id.*). In June 2023, Dean Torres responded to Gandaria by

acknowledging the issues, but also stating that, "what we really need right now from everyone is more of a collaborative, team spirit and I am still struggling to see that from you." (*Id.*). Dean Torres also reacted negatively in April 2023 when Gandaria informed him that she planned to step down from her role as Co-Investigator to focus on her faculty teaching. (*Id.*).

Undeterred by these responses, Gandaria continued emailing UTRGV officials, including several compliance officers to address "an imminent breach of contract against her by Dean Torres." (*Id.* at 5–6). This led to a June 21, 2023, meeting with Dean Torres to address Gandaria's concerns about her pay and her fear of retaliation for raising these concerns. (*Id.* at 6). Gandaria memorialized this meeting in an email to Dean Torres in which she thanked him for clarifying a cultural misunderstanding regarding a Spanish statement he made that translated to "with a dead dog, the flea problem ends." (*Id.*). Dean Torres responded that this saying, also called a "dicho," has a different meaning in Puerto Rico and that he often found himself in trouble when using Puerto Rican phrases in Mexico. (*Id.*). He also informed Gandaria that he would speak with Provost Zayas about her concerns and that she would "be paid every penny [she was] owed." (*Id.*).

On July 5, 2023, Gandaria once again emailed UTRGV Compliance Officers with four topics of concern: (1) Dean Torres's close relationship with Provost Zayas and his implication in a meeting that this relationship should intimidate her, (2) Dean Torres's use of the Spanish "dicho" as a threat and the fact that he lied about it having a different meaning in Puerto Rico, (3) Dean Torres's willful mischaracterization of her teaching assignments and his retaliatory attempts to create a negative paper trail to disparage her

4

character, and (4) that UTRGV policies were not being applied consistently and fairly. (*Id.* at 7–8).  These complaints continued into August 2023, despite UTRGV's payment of her missing wages.  (*Id.* at 8–9).

On July 24, 2023, Dean Torres emailed Gandaria to chastise her for her persistence in raising complaints.  (*Id.* at 8–9).  He stated that, "This needs to stop.  Astrid, if you are unwilling or unable to teach the courses you are assigned, please simply state that and we will take it from here."  (*Id.* at 9).  This was followed by an August 25, 2023, email in which Dean Torres told Gandaria, "If you cannot function according to the parameters laid out in your letter of hire . . . you are welcome to submit your resignation and seek a position elsewhere."  (*Id.*).  Gandaria reported these threats to UTRGV Compliance Officers but did not receive a response.  (*Id.*).  Gandaria alleges that Dean Torres's threats were due in part to her Mexican ethnicity, specifically, because she was from Reynosa, Mexico.  (*Id.* at 9–10).  According to her, this was evidenced by a December 2023 situation where Dean Torres made fun of a new British faculty member for lacking the "Reynosa accent" of Gandaria and several other faculty members from Reynosa.  (*Id.*).

During this time Gandaria was diagnosed with breast cancer.  (*Id.* at 10).  On December 19, 2023, she submitted a request to go on FMLA leave for surgery from January 8, 2024, to February 21, 2024, which UTRGV did not grant until after her surgery on January 17, 2024.  (*Id.*).  After receiving clearance to return to work, Gandaria learned that she needed to undergo chemotherapy treatment.  (*Id.*).  Ebe though she feared that she would be fired if she used her FMLA to complete the treatments, Gandaria requested

intermittent FMLA in which she took eight hours of leave every 21 days from February to August 2024. (*Id.*). UTRGV approved this request. (*Id.*).

Following this, Gandaria alleges that she was not informed of her upcoming summer teaching assignments that were promised in her employment contract. (*Id.*). After Associate Dean Letitia Sosa informed her that few summer teaching assignments were available and that no final decision had been made, Gandaria replied that her FMLA would not affect her ability to teach the courses. (*Id.*). She copied Dean Torres on that email. (*Id.* at 10–11). Dean Torres responded that he never promised her summer classes and referred to his August 2023 email in which he offered for Gandaria to resign if she took issue with her teaching assignments. (*Id.* at 11).

This culminated in Dean Torres's May 31, 2024, decision to issue Gandaria a non-reappointment letter, despite her still having over a year left on her appointment. (*Id.*). The stated justification for this action (as well as Reyes's non-reappointment) was that "lines of funding for faculty were being repurposed to 'meet operational needs in the [SSW].'" (*Id.*). Gandaria takes issue with this reasoning because the funding for her position was secured at the time of her hiring. (*Id.*). Further, despite stating that it was eliminating her position, UTRGV posted an August 2024 job announcement for a one-year, full-time lecturer. (*Id.* at 11–12). Gandaria later discovered that other less qualified individuals that lacked the "Reynosa accent" were assigned to teach a larger number of summer classes than her, despite being part-time lecturers. (*Id.* at 11). This included Cynthia Catchings, an individual that Gandaria alleges donated thousands of dollars to UTRGV's Foundation. (*Id.*). In response, Gandaria filed complaints with UTRGV's

Compliance Office and, when that was unsuccessful, filed EEOC charges under Title VII, the ADA, and the FMLA.  (*Id.* at 12–13).

### B.      SANDRA ORTA

UTRGV hired Sandra Orta in March 2016 as a Title IV-E Child Welfare Program Coordinator.  (*Id.* at 13).  In 2022, she was promoted by Dean Torres to Director of the program, a position that gave her discretion to direct UTRGV's Title IV Grant funds.  (*Id.*). Dean Torres served as her supervisor.  (*Id.*).  In addition, she began teaching as a part-time Lecturer I in Fall 2018.  (*Id.*).  Throughout her employment, Orta received annual evaluations stating that she exceeded expectations.  (*Id.*).

Despite this, Orta alleges that UTRGV and Dean Torres began a "campaign of discriminatory and hostile behavior" toward her and other SSW staff.  (*Id.*).  Dean Torres allegedly undermined her capabilities and stripped her of decision-making authority over the University's Title IV grant funds, despite her role as Director of the Title IV-E program.  (*Id.* at 13–14).  These actions included forcing a change in the grant's Principal Investigator (despite this requiring federal authorization) and ordering Orta to provide him with a list of her tasks and responsibilities as well as her 2020 Job Audit Request, which resulted in her promotion.  (*Id.* at 14–15).  After receiving these documents, Dean Torres allegedly told Orta that her job responsibilities could have been done by a part-time employee.  (*Id.* at 15).  Moreover, he chastised Orta for making unauthorized decisions regarding which faculty members could attend grant-supported conferences, despite the grant not requiring direct approval from the Dean.  (*Id.*).  She also discovered

that UTRGV was not paying her for several Title IV-E courses on which she had worked. (*Id.* at 16).

Orta became worried that Dean Torres's actions would put students and the community at risk of losing child welfare services and that the Title IV funds were not being used appropriately. (*Id.*). Therefore, in October 2023 she decided to make her complaints known to the Texas Department of Family and Protective Services ("FPS"). (*Id.* at 17). She reached out to Leroy Torres, the administrator for the FPS office division managing FPS's contracts with state offices, to inquire about contract-course teaching stipends and payments. (*Id.*). Three days later, Orta was placed on administrative leave and later fired by the University. (*Id.* at 17–18). While on leave, UTRGV deposited a gross payment of $29,568.75 into Orta's checking account, which she understood was due to her underpayment concerns. (*Id.* at 18). She appealed Dean Torres's decision to fire her to Provost Zayas and UTRGV Human Resources, however, that appeal was denied. (*Id.* at 18–19).

Orta also alleges that Dean Torres created a hostile and discriminatory work environment. Specifically, she claims that Dean Torres would regularly mock Mexican accents when in earshot of Reyes, who is Mexican and whose father is from Reynosa, Mexico. (*Id.* at 14). Dean Torres also allegedly stated that the Mexican accent "sounded like singing" and would insultingly mimic the Reynosa accent in front of multiple people, including Orta. (*Id.*). Moreover, after Orta explained to him that several of his requested changes were inconsistent with grant requirements, Dean Torres allegedly became irate and stated that he was "El Patrón" and that she should do what he said. (*Id.* at 14–15).

8

Orta claims that this title culturally meant that "he was the boss and that she, as a woman working under him, should stay silent and obey." (*Id.* at 15). Following her firing, Orta filed an EEOC charge alleging discrimination and retaliation under Title VII. (*Id.* at 19–20).

### C.    MAYRA REYES

In October 2021, Mayra Reyes was recruited by Nelda Rodriguez to work under her as a Field Coordinator for the SSW. (*Id.* at 20). Reyes later transitioned to a Clinical Associate Professor at UTRGV in March 2022. (*Id.*). Despite this new position, Rodriguez micromanaged Reyes's work and treated her more as a staff member than faculty. (*Id.*). Dean Torres spoke with Rodriguez several times to clarify Reyes's position and duties, however, Rodriguez did little to change her management style. (*Id.*). This eventually led to a meeting between Reyes, Rodriguez, Dean Torres, and other UTRGV officials during which Rodriguez directed personal attacks at Reyes and stated that she regretted hiring her. (*Id.*). Dean Torres allegedly made no attempt to defend Reyes from these comments. (*Id.* at 20–21). Instead, when Reyes later met with him, Dean Torres informed her that he agreed that Reyes was a "backstabber" and stated that she was "ghetto" because of the way she spoke with her hands and the bluntness of her emails. (*Id.* at 21).

Dean Torres allegedly made several other comments that Reyes perceived as discriminatory. During the Spring 2023 SSW hooding and pinning ceremony, he again referred to himself as "El Patrón," which, according to Reyes, signaled to the female SSW faculty "that he was their boss in a master-slave type of relationship." (*Id.*). He also made disparaging remarks about the SSW faculty with Reynosa accents during the Fall 2023

9

hooding and pinning ceremony.  (*Id.* at 22).  In June 2023, Dean Torres allegedly stated that Reyes had problems with authority and that the reason he had not yet fired her was because she was a single mother that had just bought a home for her family.  (*Id.* at 21).  This led Reyes to inform UTRGV in September 2023 that she no longer wanted to work in the Field Coordinator office.  (*Id.*).  She was then moved to the social work bachelor's program in Spring 2024 to get away from the "toxic environment" created by Torres and Rodriguez.  (*Id.*).

In December 2023, Reyes suffered a medical emergency and was hospitalized.  (*Id.* at 22).  Despite needing surgery, she was hesitant to request time off because of Dean Torres's previous lack of empathy regarding her medical situation and her belief that he would fire her.  (*Id.*).  Eventually, however, Reyes's recent kidney-cancer diagnosis required her to request FMLA leave in Spring 2024.  (*Id.*).  This request was granted.  (*Id.*).  When she later received her faculty workload effort approved by Dean Torres in April 2024, Reyes felt confident that her health condition would not jeopardize her employment.  (*Id.* at 22–23).  As a result, two days later Reyes felt comfortable submitting a negative evaluation of Dean Torres alongside Gandaria.  (*Id.* at 23).  Following this, Reyes was notified that Dean Torres was not reappointing her and that her employment would end on May 31, 2024.  (*Id.*).  Reyes asserts that Dean Torres timed this notification to occur on the day of her surgery to "inflict maximum retaliatory damage against her." (*Id.*).

Reyes filed an EEOC charge under Title VII alleging discrimination and retaliation. (*Id.* at 24).  On October 24, 2024, Reyes, along with Gandaria and Orta, filed this lawsuit

against UTRGV, Dean Torres, Provost Zayas, and UTRGV President Bailey alleging claims under Title VII, and in the case of Gandaria and Reyes, claims under the ADA and FMLA. (*See generally id.*). Plaintiffs amended their Complaint twice, (Dkt. Nos. 13, 18), and Defendants moved to dismiss the Second Amended Complaint on March 28, 2025, and May 23, 2025, (Dkt. Nos. 19, 27). Plaintiffs responded to each Motion, (Dkt. Nos. 25, 32), and Defendants replied, (Dkt. Nos. 26, 33).

## II.   LEGAL STANDARD

### A.   RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed. 2d 33 (2021); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021).

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, LLC v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

**B.    RULE 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). "The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists." *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when

12

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

## III.　DISCUSSION

The Court first addresses Gandaria and Reyes' ADA and FMLA claims against the individual Defendants and then turns to Plaintiffs' Title VII claims against UTRGV.

### A.　ADA AND FMLA CLAIMS

Plaintiffs Gandaria and Reyes bring ADA and FMLA claims against the individual Defendants in their official capacities. Defendants argue that they are immune from these claims under the Eleventh Amendment, notwithstanding the exception identified in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), because the Second Amended Complaint does not allege facts demonstrating that the individual Defendants have the power or authority to reinstate plaintiffs. (Dkt. No. 27 at 10–12, 19–20); (Dkt. No. 33 at 6–9). Plaintiffs respond that the *Ex parte Young* exception applies according to the Fifth Circuit's decision in *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318 (5th Cir. 2008), because

they are seeking reinstatement, a prospective remedy.  (Dkt. No. 32 at 1–4).  The Court agrees with Defendants.

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."  *Union Pac. R.R. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (quoting *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S.Ct. 1640, 1642, 152 L.Ed.2d 806 (2002)).  An action against a state official in their official capacity is treated as one against the State and therefore "barred by the Eleventh Amendment, subject only to the limited exception permitted by *Ex parte Young*."  *Henley v. Simpson*, 527 F.App'x 303, 305 (5th Cir. 2013).

The *Ex parte Young* doctrine permits only prospective relief against state officials to prevent ongoing violations of federal law. *See Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *United States v. Abbott*, 85 F.4th 328, 336 (5th Cir. 2023).  A claim for reinstatement constitutes a claim for prospective relief.  *Nelson*, 535 U.S. F.3d at 322; *see also Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996).  However, the individual defendant must "'have some connection with the enforcement of the act,' or [be] 'specially charged with the duty to enforce' the law at issue."  *Abbott*, 85 F.4th at 334 (quoting *Ex parte Young*, 209 U.S. at 157–58, 28 S.Ct. at 452–53).  "To be a proper defendant under *Ex parte Young*, the officer must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Smith v. Univ. of Tex. at San Antonio*, No. 5:23-CV-00538, 2024 WL 4256461, at *8 (W.D. Tex. Aug. 21, 2024), *report and recommendation adopted in part* 2024 WL 4256444 (W.D. Tex. Sep. 18, 2024) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).  Thus, the doctrine does

14

not apply if the individual Defendants in this case do not actually have the authority to reinstate Plaintiffs.

Here, while Gandaria and Reyes seek prospective relief, their Second Amended Complaint does not allege facts demonstrating that the individual Defendants actually have the authority to reinstate them. The Complaint states that "[o]ne or more of [the individual Defendants] has the authority and power, in his official capacity, to reinstate Plaintiffs." (Dkt. No. 18 at 28, 29). However, this is nothing more than a "mere conclusory statement[]," *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965), that does not explain the basis for this assertion or make clear which specific Defendants have that authority, (*see* Dkt. No. 18 at 28, 29 (stating that "[o]ne or more" of the individual Defendants have reinstatement authority)). Moreover, the allegations that the individual Defendants conspired in the past to violate the ADA and FMLA, (*see, e.g.*, *id.* at 28–29), do not save the Complaint because "engaging in a past act connected to a challenged action does not necessarily give rise to the authority to provide a prospective remedy if that act is found unlawful," *Smith*, 2024 WL 4256461, at *9 (citing *Abbott*, 85 F.4th at 333–34). Without specific allegations regarding the individual Defendants' authority to reinstate them in the future, Gandaria and Reyes' ADA and FMLA claims are barred by Eleventh Amendment immunity and must be dismissed.

### B.    TITLE VII

#### 1.    Discrimination Claims

All three Plaintiffs bring Title VII gender and national-origin discrimination claims against UTRGV, arguing that UTRGV, through Dean Torres and other University

15

officials, discriminated against them because they are women and are from Reynosa, Mexico.  In its Motion to Dismiss, UTRGV argues that Plaintiffs have failed to state a Title VII claim for either gender or national-origin discrimination.  Specifically, it argues that Plaintiffs failed to satisfy the fourth element of the *McDonnell Douglas* burden-shifting framework normally used in Title VII cases.  (Dkt. No. 19 at 10–12).[3]  UTRGV also claims that Plaintiffs failed to plead facts (beyond their own speculation) that they were terminated based on their national origin or gender.  (*Id.* at 11–12 (arguing that the "off-hand comments allegedly made by Dean Torres and Nelda Rodriguez" are merely "stray remarks" that do not constitute evidence of discrimination)).  Plaintiffs respond that the *McDonnell Douglas* framework is inappropriate at the motion-to-dismiss stage and that they have met their burden under the correct standard by pleading that they were terminated due to discrimination by Dean Torres and other UTRGV employees.  (Dkt. No. 25 at 10–12).

The Court agrees with Plaintiffs that UTRGV places too high a burden on them at this point.  "At the Rule 12(b)(6) stage, [a court's] analysis of [a] Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) — and not

---

[3]    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* test, a plaintiff must first make a prima facie showing of employment discrimination by demonstrating that she: (1) is a member of a protected class; (2) was qualified for the position that she held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside her protected class. *Id.* Once the employee makes a prima facie case, the burden "shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.*  If the employer can articulate such a reason, the burden shifts back to the employee to demonstrate that the employer's proffered reason is just a "pretext for discrimination." *Id.*

the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green . . . ." Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status."[4] *Id.* (internal quotations omitted) (emphasis in original).

Here, Plaintiffs have met this burden. All three women state that their terminations and other adverse employment actions were based, at least in part, on Dean Torres's prejudice towards women and people from Reynosa, Mexico. Gandaria alleges that Dean Torres used an insulting colloquial Spanish saying (a "dicho") and claimed that it meant something different in Puerto Rico—where he's from. (Dkt. No. 18 at 6–7). She also claims to have heard Dean Torres make fun of a new British faculty member because he lacked the "Reynosa accent" of other faculty members. (*Id.* at 9–10). Orta asserts that Dean Torres "would regularly mock Mexican accents within earshot" of her and "loudly and insultingly" mimic the Reynosa accent. (*Id.* at 14). Dean Torres also allegedly reacted negatively to Orta questioning his decisions regarding her job responsibilities and the Title IV grant, calling himself "El Patrón." (*Id.* at 14–15). Orta asserts that Dean Torres's use of this term meant "that he was the boss and that she, as a woman working under him, should stay silent and obey." (*Id.* at 15). Reyes pleads that Dean Torres also referred

---

[4] "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (internal quotations and citation omitted).

to himself as "El Patrón" in front of her and that he stated she was "ghetto" because of the way she used her hands to talk and the bluntness of her emails. (*Id.* at 21). Plaintiffs assert that these comments were prompted by their attempts to raise complaints regarding their employment terms and Dean Torres's displeasure that they, as women, dared to challenge him. (*See id.* at 12, 15, 19, 21). Dean Torres also allegedly made a disparaging remark about SSW faculty from Reynosa, like Reyes. (*Id.* at 22).

Taking these allegations as true and drawing reasonable inferences in Plaintiffs' favor, the Complaint plausibly alleges that Plaintiffs were subjected to adverse employment actions — their terminations — at least in part because of their gender and national origin. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) ("The district court erred by holding [the plaintiffs] to a heightened pleading standard. The court's analysis of the complaint's allegations — scrutinizing whether [the plaintiffs'] fellow employees were really 'similarly situated' and whether [their superiors'] derogatory statements about Italians amounted to 'stray remarks' — was more suited to the summary judgment phase."). Dean Torres's alleged statements and actions can reasonably be seen as bias against Plaintiffs because of their protected characteristics, thus allowing for an inference of discrimination that satisfies *Swierkiewicz*.

Furthermore, although a plaintiff does "not have to submit evidence to establish a prima facie case of discrimination [under *McDonnell Douglas*] at this stage, [she must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam). While it is not required at this stage, "it can be 'helpful to reference'

18

[the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim" because the plaintiff will eventually need to satisfactorily assert each element of the *McDonnell Douglas* test to meet her burden to recover. *Olivarez*, 997 F.3d at 600 (internal quotations omitted).

UTRGV concedes for the purposes of the pleading standards set out in *Twombly* and *Iqbal* that Plaintiffs meet the first three prongs of the *McDonnell Douglas* test but disputes that the fourth prong is satisfied. (Dkt. No. 19 at 10–12). As to the national-origin discrimination claim, the Court disagrees. The Second Amended Complaint sufficiently pleads similar comparators that were treated more favorably by Dean Torres, including "other faculty less qualified than [Gandaria] was, but . . . without 'Reynosa accents.'" (Dkt. No. 18 at 11). This is enough at the Rule 12(b)(6) stage. Yes, whether these other faculty members are "similarly situated" to Plaintiffs faces a demanding standard in this Circuit, *see Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009), but that is for the summary-judgment stage. To impose such a rigorous inquiry at the pleading stage when discovery has not occurred would make it nearly impossible to bring a circumstantial case of employment discrimination.

### 2.    Retaliation Claims

Like for a Title VII discrimination claim, a plaintiff bringing a Title VII retaliation claim "does 'not have to submit evidence to establish a prima facie case . . . at [the pleading] stage.'" *Id.* at 433 (citing first *Chhim*, 836 F.3d at 470; and then citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)) (alterations in original). They "need only

plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese*, 924 F.3d at 768; *see also Wright*, 990 F.3d at 433. To establish Title VII retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). For the following reasons, the Court finds that Plaintiffs have not stated plausible claims.

a.    Protected Activity

The first element of a Title VII retaliation claim requires the plaintiff to have engaged in protected activity. The Fifth Circuit explained, "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e–3(a)).

UTRGV argues that Plaintiffs have failed to sufficiently plead "*what* discrimination they complained of, *when* they complained of the discrimination and *how* they complained of discrimination." (Dkt. No. 19 at 9) (emphasis in original). Plaintiffs respond by pointing to several instances of protected activity described in their Complaint: (1) Gandaria's July 5, 2023, email to UTRGV Compliance officers regarding, in part, Dean Torres's use of the "dicho," (2) Orta's complaints to UTRGV officials regarding the hostile and discriminatory work environment she claims to have faced, and

20

(3) negative evaluations of Dean Torres submitted by Gandaria and Reyes in March 2024. (Dkt. No. 25 at 9, 12–14).

Reading the Second Amended Complaint in the light most favorable to Plaintiffs, the Court assumes without deciding that only Gandaria's July 2023 email constitutes a protected activity. By complaining about Dean Torres's use of the "dicho" and the cultural connotations it carried, (Dkt. No. 18 at 7–8), it is plausible that Gandaria brought allegations of national-origin discrimination to her superior, which would amount to opposing a practice made unlawful under Title VII, *see Long,* 88 F.3d at 304. The remaining activities Plaintiffs point to—Orta's pushback to an alleged hostile work environment as well as Reyes and Gandaria's negative evaluations of Dean Torres—do not rise to the level of protected activity based on the information provided in the Complaint. Plaintiffs' allegations regarding these activities are sparse; the Complaint does not specify what was said or how they characterized Dean Torres's actions. That Plaintiffs plead these complaints were meant to address a hostile work environment is inconsequential. Their factual pleadings include a variety of actions taken by Dean Torres, some of which may violate Title VII and some of which clearly do not. Because the Complaint does not specify which of these actions Plaintiffs complained about, the Court cannot find that Orta's complaints or the negative evaluations of Dean Torres constituted protected activity. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F.App'x 485, 493 (5th Cir. 2011) (per curiam) ("[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *see also Tratree v. BP N. Am. Pipelines, Inc.*, 277 F.App'x 390, 395 (5th Cir. 2008) ("Complaining

21

about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity.").

> b.      Adverse Employment Action

The next inquiry is whether Gandaria—as the only Plaintiff with a potentially viable retaliation claim remaining—has pled facts sufficient to demonstrate that UTRGV took an adverse employment action against her.  Gandaria and UTRGV agree that UTRGV took an adverse employment action against her when it declined to reappoint her on May 31, 2024.  (*See* Dkt. No. 19 at 13); (Dkt. No. 18 at 11).

> c.      Causal Connection

The last element of a Title VII retaliation claim is a causal connection between the protected activity and the adverse employment action.  UTRGV argues that Gandaria has failed to meet this burden because she cannot show that her firing "would not have occurred but for [her] national origin and gender."  (Dkt. No. 19 at 13–14).  Further, it argues that Gandaria was terminated because of a "repurposing of lines of funding." (*Id.*).  Gandaria responds that the causal connection element can be satisfied by showing close enough timing between the protected activity and the adverse employment action. (Dkt. No. 25 at 13–14).

Close timing may satisfy the causal connection element.  *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc)).  But "[s]uch temporal proximity must generally be 'very close.'"  *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149

22

L.Ed.2d 509 (2001) (per curiam)). "[A] time lapse of up to four months may be sufficiently close," *id.* (quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001)) (internal quotation marks omitted), but a five-month lapse is insufficient, absent other evidence of retaliation, *id.* (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2022)).

Here, there is nearly a year-long gap between Gandaria's July 5, 2023, email and the May 31, 2024, decision not to reappoint her. This does not constitute close timing sufficient to establish a causal connection. Moreover, even reading the facts alleged in the light most favorable to Gandaria, the Court cannot reasonably infer that UTRGV terminated her because of her "dicho" complaint in the July 5, 2023, email. While Gandaria does plead that Dean Torres grew tired of her complaints and threatened adverse employment action if she continued, nothing in the Complaint connects these threats specifically to her complaint about the "dicho." The quotes from Dean Torres in the Complaint involve dissatisfaction with Gandaria's perceived failure to abide by the terms of her employment contract, not her concerns about his language. (Dkt. No. 18 at 8–9). Therefore, Gandaria's Title VII retaliation claim must be dismissed with the other Plaintiffs' for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants Torres-Hostos, Zayas, and Bailey's Motion to Dismiss, (Dkt. No. 27), is **GRANTED** and Defendant UTRGV's Motion to Dismiss, (Dkt. No. 19), is **GRANTED in part** and **DENIED in part**. Plaintiffs Gandaria and Reyes's ADA and FMLA claims against the individual Defendants are **DISMISSED without**

**prejudice**.    Plaintiffs' Title VII retaliation claims against UTRGV are **DISMISSED without prejudice**.

Plaintiffs may file an Amended Complaint no later than April 17, 2026, addressing the issues raised in this Memorandum Opinion and Order.   No additional 12(b)(6) motions will be considered.   Defendants may file a summary judgment motion, if appropriate, after the Parties have had the opportunity to engage in discovery.

It is SO ORDERED.

Signed on March 30, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**